NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 177, | : : : | **Hon. Dennis M. Cavanaugh** |
| Petitioner, | : : | **OPINION** |
| v. | : : | Civil Action No. 09-CV-0903 (DMC) |
| UNITED PARCEL SERVICE OF AMERICA, INC., | : : : | |
| Respondent. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Petitioner International Brotherhood of Teamsters Local 177 ("Local 177" or "Petitioner") to vacate and remand the arbitration award to the arbitrator for clarification pursuant to Title 9, United States Code, Section 10 (a)(4). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After considering the submissions of all parties, and based upon the following, it is the finding of this Court that the decision of Arbitrator M. David Vaughn, Esq. ("arbitrator") is **affirmed.**

I.    BACKGROUND AND PROCEDURAL HISTORY

On November 8, 2006, the President, Secretary-Treasurer and five other members of the International Brotherhood of Teamsters Local 177 commenced an action in this Court against United Parcel Service of America, Inc. ("UPS" or "Respondent"), contending UPS breached its fiduciary duty under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., by failing to make contractually specified contributions to its health and welfare plans.

Petitioner's claim is premised upon Article 34 of the parties' collective bargaining agreement, otherwise known as the National Master Agreement ("NMA"). The NMA deals primarily with UPS's obligation to make contributions to the jointly-trusted pension and health and welfare plans in which it participates, requiring UPS to contribute specified amounts to its own Health and Welfare Plans. Article 34 provides, in pertinent part:

> Health & welfare and/or pension contributions shall be increased by twenty-six dollars ($26.00) per week on August 1, 2002, and twenty-four dollars ($24.00) per week on August 1, 2003, and twenty-four dollars ($24.00) per week on August 1, 2004, and twenty-four dollars ($24.00) per week on August 1, 2005, and twenty-four dollars ($24.00) per week on August 1, 2006, and twenty-eight dollars ($28.00) per week on August 1, 2007. Where the employees are covered by both Teamster Health & Welfare and Pension Funds in Supplement, Rider or Addendum, the weekly health & welfare and pension contributions shall be allocated by the respective Joint Supplemental Area Negotiating Committees, subject to the approval of the Joint National Negotiating Committee. In those Supplements, Riders or Addenda where some of the employees are covered by a Teamster Health and Welfare Plan and some of the employees are covered by the Company Health and Welfare Plan, the amount of money allocated to the Company Health and Welfare Plan shall be the same as the amount allocated to the Teamster Health and Welfare Plan in the Supplement, Rider or Addendum. The applicable Supplement, Rider or Addendum will reflect the appropriate agreed-to increases to the Teamster Pension Plans in those Supplements, Riders or Addenda where all the employees are in the Company Health and Welfare Plan and/or covered by Section (f) of this Article. These increases shall be allocated as follows: twenty-five cents ($.25) per hour to Health and Welfare in each year of the contract. The remainder of the contribution increase each year will be paid into pension.

(Pet'r's Br. 4-5).

On February 14, 2007, in response to Petitioner's original complaint and consistent with the procedures set forth by the NMA, Respondent filed a grievance with the National Grievance Committee seeking interpretation of the disputed contractual provision in the collective bargaining agreement. Respondent also moved before the District Court to dismiss or, in the alternative, stay

2

the action pending the outcome of grievance and arbitration proceedings.

On October 2, 2007, this Court stayed the action pending the outcome of grievance and arbitration proceedings as a matter of law for failure to exhaust the contractual grievance procedures. The Court held that Petitioner's claims require a predicate interpretation of the collective bargaining agreement, "namely whether UPS owes contribution at specified rates," and retained jurisdiction to address the Petitioner's ERISA claims post-arbitration.

On December 1, 2008, the arbitrator issued a decision and award sustaining Respondent's grievance. The parties submitted and agreed upon the following issue for arbitration: "Is the Company required to make hourly contributions to its own Health and Welfare Plans under Article 34 of the National Master Agreement from 2002 forward?"  In response to the issue submitted before him, the arbitrator concluded, "[t]he Company is not required to make hourly or other defined contributions to its own Health and Welfare Plans under Article 34 of the National Master Agreement from 2002 forward." United Parcel Services of America v. International Brotherhood of Teamsters Local 177, Lab. Arb. Rep. (2008) (Vaughn, Arb.). In his opinion, however, the arbitrator also suggested UPS might be liable for retaining monies in excess of the costs of providing and administering benefits ("surplus funds"), but declined to resolve this "related issue[,]" finding that the specific issue submitted before him did not include the separate question regarding the status of such surplus funds. United Parcel Services of America v. International Brotherhood of Teamsters Local 177, Lab. Arb. Rep. (2008) (Vaughn, Arb.).

On February 2, 2009, Petitioner filed this motion to vacate and remand the arbitration award to the arbitrator for clarification claiming that the arbitrator's failure to resolve whether the NMA obligates UPS to allocate contractually mandated "health and welfare contribution increases only to

3

health and welfare" [sic] renders the award incomplete and ambiguous.

**II.     STANDARD OF REVIEW**

The court's standard of review of a labor arbitration award is narrow. Major League Umpires Ass'n v. American League of Professional Baseball Clubs, 357 F.3d 272 (3d Cir. 2002). Under the Federal Arbitration Act, a court may vacate an arbitration award if the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). A court's role in reviewing an arbitration award is not to correct factual or legal errors made by an arbitrator. Major League Umpires Ass'n, 357 F.3d at 279. The court is limited to assessing "whether the award draw[s] its essence from the collective bargaining agreement[,]" and may only vacate an arbitrator's award if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement. Exxon Shipping Co. v. Exxon Seamen's Union, 73 F. 3d 1287, 1291 (3d Cir 1996). Subject only to a standard of minimal rationality, an arbitrator's decision requires neither wisdom nor internal consistency. Id. The court must determine whether the arbitrator manifestly disregarded the terms of the agreement in making the arbitration award.

**III.     DISCUSSION**

**A. The Issue of Surplus Funds**

Petitioner characterizes the issue of surplus funds as a question integral to the dispute originally submitted for arbitration. Petitioner argues that the failure to resolve this issue renders the award incomplete and ambiguous, and therefore neither final nor definite.

An arbitrator may not venture beyond the bounds of his or her authority which is dictated by the terms of a collective bargaining agreement and the issues submitted by the parties. Major League

4

Umpires Ass'n, 357 F.3d at 229. An arbitrator has the authority to decide only the issues actually submitted. Matteson v. Ryder System Inc., 99 F 3d 108, 112 (3d Cir. 1996). The arbitrator is responsible for interpreting the scope of the parties' submissions, but this interpretation is subject to judicial review. Id.

Similar to the deference afforded an arbitrator's interpretation of the collective bargaining agreement, review concerning the arbitrator's interpretation of a submission is highly deferential. Major League Umpires Ass'n, 357 F.3d at 229. In conducting review of an arbitrator's interpretation, the same level of deference accorded an arbitrator's interpretation of the collective bargaining agreement should also be accorded an arbitrator's interpretation of the issue submitted. Matteson v. Ryder System Inc., 99 F 3d 108, 112 (3d Cir. 1996).

Parties, not arbitrators, decide the issues submitted for arbitration; absent formal, written submission, the parties' conduct as a whole must be considered. Id. at 115. In Matteson, the Third Circuit Court of Appeals held an arbitrator exceeded his authority by deciding issues beyond the parties submissions and, consequently, set aside the arbitration award in a labor dispute between truck drivers and commercial carriers. Id. at 109. The court decided that the issue submitted for arbitration by the parties was an increase in toll schedule, and the arbitrator had exceeded his authority in deciding other aspects of the compensation scheme, including gross revenue percentages and ancillary charges. Id. The parties failed to prepare a single document containing the issues they wished to submit, thus, requiring the court to examine the entire history of the grievance in order to define the issues submitted. Id. Although the parties initially submitted documents discussing the issue of percentage of gross revenue due the drivers and other documents referencing provisions of the collective bargaining agreement, governing issues well beyond toll payments, the court, after

reviewing all the documents submitted during the two years of the dispute, concluded the intent of the parties was to arbitrate *only* the increase in the toll schedule. Id. at 115.

Unlike <u>Matteson</u> where the court defined the issues after confronting "a tangle of documents," this Court can clearly define the issue submitted for arbitration. Here, the parties did prepare a single document containing the issue they wished to arbitrate. The parties agreed upon and submitted a single issue for arbitration, namely, whether UPS was contractually obligated to make contributions for health and welfare at specified rates.  By formal written submission, the parties clearly defined their intent to arbitrate only whether UPS was required to make hourly contributions to the health and welfare plans. Accordingly, the arbitrator limited the scope of his authority based on this formal written submission; therefore, the Court cannot find this interpretation reflects a manifest disregard of the issues submitted. This Court holds the arbitrator's decision not to address the issue of surplus funds is rational and, therefore, will not disturb the arbitrator's decision.

**B. Functus Officio Doctrine**

Petitioner contends that remand of the arbitration award for clarification does not offend the doctrine of *functus officio*. As a general rule, once an arbitrator renders a decision regarding the issues submitted, it becomes *functus officio* and lacks any power to re-examine that decision. <u>Colonial Penn Ins. Co. v. Omaha Indem. Co.</u>, 943 F. 2d 327, 329-30 *(*3d Cir. 1991). The Third Circuit Court of Appeals has applied the *functus officio* doctrine in reviewing labor arbitration, but has recognized the following exceptions: "(1) an arbitrator can correct a mistake which is apparent on the face of his award; (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and (3) where the award, although seemingly complete, leaves doubt

whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." The *functus officio* doctrine exceptions are narrowly drawn in order to prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award. Teamsters Local 312 v. Matlack, Inc, 118 F.3d 985, 991-992 (3d Cir. 1997). Whether a case falls within one of the categories must be considered in light of the underlying rationale for the modern application of *functus officio*. Id.

        The exception under category (1) above, permitting an arbitrator to correct a mistake apparent on the face of the award, is designed for cases of clerical mistakes or obvious error of arithmetic computation. Id. Petitioner does not contend there is a mistake on the face of the award. Therefore, the Court declines to remand the arbitration award pursuant to this exception.

        The rationale for the exception under category (2) above, authorizing an arbitrator to decide a remaining issue which has been submitted by the parties, but not resolved, is that the arbitration agreement between the parties is still in force and the arbitrator's power over the remainder of the unresolved submission continues. Id. This Court affords deference to the arbitrator's interpretation of the issue of surplus funds as beyond the scope of his authority. This Court rejects the argument that the award does not arbitrate the issue submitted because it leaves unresolved an issue regarding UPS contractual obligations other than required contributions at a specified rate. Accordingly, this Court holds the arbitrator has exhausted his function with respect to the issue submitted, therefore, arbitration is no longer open for his determination.

        The exception under category (3) above, entitling an arbitrator to clarify an ambiguity in a "seemingly complete" award where there is "doubt whether the submission has been fully executed,"

does not undermine the policy considerations that prohibit arbitrators from re-examining awards "for there is no opportunity for redetermination on the merits of what has already been decided." Id. The Third Circuit Court of Appeals explained that the La Vale decision illustrates the situation in which re-submission to an arbitration panel for clarification is permissible. Teamsters Local 312 v. Matlack, Inc, 118 F.3d 985, 991-992 (3d Cir. 1997). There, an arbitration award had been issued in favor of the defendant for approximately $31,000. La Vale, 378 F.2d at 570. Plaintiff filed an action to recover approximately $25,000, the difference between the arbitration award and a deposit made during the pendency of the arbitration proceedings of approximately $56,000. Id. The defendant contended that the arbitration panel recognized the deposit as a partial payment and awarded an additional payment of $31,000 thereafter. The court held the award required clarification as it contained apparent ambiguity as to whether it required an additional payment to the defendant or a partial refund to the plaintiff.

Petitioner contends both that the arbitration award is incomplete for failing to address the emerging issue of surplus funds and that the "remand for clarification sought would in no way alter the merits of the issue affirmatively determined by the arbitrator." However, in the instant matter, the award does not contain an ambiguity which the arbitrator is required to clarify and there is no doubt that the submission has been fully executed. Indeed, to the contrary, the arbitrator's conclusion that "[t]he Company is not required to make hourly or other defined contributions to its own Health and Welfare Plans under Article 34 of the National Master Agreement from 2002 forward" is explicit. Although the arbitrator's opinion suggests UPS may have additional obligations under Article 34, he concludes that the issue concerning surplus funds is a "related issue" beyond the scope of his authority. While Petitioner is not precluded from submitting this "related issue" to arbitration

8

pursuant to the grievance process outlined in the collective bargaining agreement, this Court finds that none of the exceptions under the *functus officio* doctrine is applicable in the instant matter and further, the award issued by the arbitrator does no reflect a manifest disregard of the agreement. Therefore, the clear and unambiguous determination that UPS is not required to make hourly contributions under the NMA will not be disturbed by this Court.

**IV.**   <u>C</u>ONCLUSION

For the reasons stated, it is the finding of this Court that the arbitration award is **affirmed**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          September   30 , 2009
Orig.:          Clerk
cc:          All Counsel of Record
          File